### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF STATE**, <br><br> Defendant. | Case No. 20-cv-2044 (CRC) |

### MEMORANDUM OPINION

In this Freedom of Information Act ("FOIA") case, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeks records related to the U.S. Department of State's handling of document and testimony requests from congressional committee chairs. After CREW filed suit, the Department released twelve responsive documents in part, but invoked FOIA Exemption 5 and the deliberative process privilege to justify withholding portions of each. CREW objects to all of the Exemption 5 redactions, which it groups into three categories: (1) material related to draft responses to specific congressional inquiries, including drafts of one letter and emails discussing potential edits; (2) emails discussing the Department's approach to various other document requests and document-processing issues; and (3) select redactions from an internal Department report discussing progress responding to document requests.[1] The parties have filed cross-motions for summary judgment on the propriety of these withholdings.

The Court will deny the State Department's motion for summary judgment, in part without prejudice, and will grant in part and deny in part CREW's cross-motion. As to the first

---

[1] The parties' briefing discusses these categories in a different order. The Court has rearranged the second and third categories to group together similar substantive discussions.

two categories, the Department has not provided sufficient detail for the Court to determine whether the material withheld is deliberative under the standards the D.C. Circuit recently articulated in <u>Reporters Committee for Freedom of the Press v. FBI</u>, 3 F.4th 350 (D.C. Cir. 2021), and <u>Judicial Watch, Inc. v. U.S. Department of Justice</u>, 20 F.4th 49 (2021).  The Court will therefore remand these matters to the Department to reevaluate the propriety of these redactions and, if it chooses, provide more detailed justifications for any remaining withholdings. But the Court does have enough information to evaluate the final group of redactions to the internal report.  State has not and cannot establish that the material redacted is deliberative, nor that release of the report would lead to reasonably foreseeable harm.  Accordingly, the Department must release this document in full.

## I.   Background

CREW is a non-profit watchdog organization focusing on government ethics and transparency.  <u>See</u> Compl. ¶ 4.  In 2020, several news outlets reported that the White House had directed administration officials—including at the State Department—to rebuff efforts at oversight from Democratic chairs of various House committees, but cooperate in full with requests by the Republican heads of Senate committees.  <u>See</u> <u>id.</u> ¶¶ 10–16.  In response to this alleged partisan approach to congressional oversight, CREW filed a complaint with the State Department's Office of Inspector General requesting an investigation into "allegations that the State Department [wa]s improperly politicizing its approach to high-profile congressional investigations."  <u>Id.</u> ¶ 17.

Not content to wait for the Inspector General to act, CREW also lodged two FOIA requests with the State Department in June 2020.  <u>See</u> <u>id.</u> ¶ 20.  In the first request, CREW sought material "pertaining, concerning, or reflecting any guidance, instruction, directive, or

recommendation on how to handle document or testimony requests from congressional committee chairs, and whether that handling differs depending on the political party of the Chairman or Chairwoman who makes the request." Id. ¶ 21. In the second request, CREW sought two additional categories of records. First, it requested any communications sent or received by certain State Department officials regarding requests for documents or testimony from three Democratic House committee chairs. Id. ¶ 22. Second, CREW asked for documents and communications sent or received by then-Secretary of State Michael R. Pompeo and other high-level officials related to CREW's Inspector General complaint. Id. ¶ 23. When the State Department failed to timely respond to the FOIA requests, CREW filed suit. See id. ¶ 27.

Production is now complete. The Department released portions of twelve responsive documents, but it redacted material from each based on the deliberative process privilege. See Stein Decl. ¶¶ 8–9, 12. CREW disputes the propriety of these withholdings. See Pl.'s Opp'n to Def.'s Mot. Summ. J. & Mem. in Support of Pl.'s Cross-Mot. Summ. J. ("Pl.'s Cross-MSJ") at 10–16. In CREW's view, the Department also has not established that foreseeable harm would result from disclosure, as required by the FOIA Improvement Act of 2016, 5 U.S.C. § 552(a)(8)(A)(i), nor that it has released any segregable, non-exempt material. See Pl.'s Cross-MSJ at 16–20. The parties filed cross-motions for summary judgment, which are ripe for review.

## II.   Legal Standards

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). "But Congress also realized that legitimate governmental and private interests could be harmed by release of certain types of information." DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (internal quotation marks omitted). "Accordingly, FOIA balances the public's need for

access to official information with the Government's need for confidentiality by exempting nine categories of records from disclosure." Id. (internal alteration and citation omitted); see 5 U.S.C. § 552(b).  Because FOIA "mandates a strong presumption in favor of disclosure," its "statutory exemptions, which are exclusive, are to be narrowly construed." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (internal quotation marks omitted).

FOIA disputes are typically and appropriately resolved on summary judgment. See Citizens for Resp. & Ethics in Washington v. Dep't of Homeland Sec., 525 F. Supp. 3d 181, 187 (D.D.C. 2021).  In FOIA cases, an "agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" Prop. of the People, Inc. v. Office of Mgmt. & Budget, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting Competitive Enter. Inst. v. EPA, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

As to the claimed exemptions, the agency may satisfy its burden through declarations that "describe[] the justifications for withholding the information with specific detail" and "demonstrate[] that the information withheld logically falls within the claimed exemption." ACLU v. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011).  "Such declarations are entitled to a presumption of good faith, and the court can award the agency summary judgment based solely on the information so provided." Jud. Watch, Inc. v. CIA, 310 F. Supp. 3d 34, 41 (D.D.C. 2018). Agency declarations will not support summary judgment, however, if the plaintiff puts forth contrary evidence or demonstrates the agency's bad faith. ACLU, 628 F.3d at 619.

As to its obligation to segregate and release non-exempt material, the government may similarly demonstrate that it released all reasonably segregable parts of otherwise exempt records

by submitting an affidavit indicating that an agency official conducted a review of each document and determined that the documents did not contain segregable information.  Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).  While the agency may not rely on conclusory statements, Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260–61 (D.C. Cir. 1977), it is entitled to a presumption that it complied with its segregability obligation, Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013).

Finally, the government must also demonstrate at summary judgment that it has satisfied the standards imposed by the FOIA Improvement Act of 2016, which allows an agency to withhold information only if it "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  The statute's "distinct foreseeable harm requirement . . . foreclose[s] the withholding of material unless the agency can articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld."  Reps. Comm., 3 F.4th at 369 (second alteration in original) (internal quotation marks omitted).

### III.   Analysis

This case concerns the application of FOIA Exemption 5 and the deliberative process privilege, which the State Department cited as justification for all the withholdings in dispute. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The Exemption thus incorporates, "albeit in a less-than-straightforward way[,] . . . the litigation privileges available to Government agencies in civil litigation," including the deliberative process privilege.  U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 141 S. Ct. 777,

785 (2021).  The deliberative process privilege exists "[t]o protect agencies from being forced to operate in a fishbowl."  Id. (internal quotation marks omitted).  To do so, it "shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  Id. (internal quotation marks omitted).  An agency may only invoke the deliberative process privilege "for documents that are both predecisional and deliberative."  Reps. Comm., 3 F.4th at 362.  "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position."  U.S. Fish & Wildlife Serv., 141 S. Ct. at 786.

CREW groups its challenges to the government's invocation of the deliberative process privilege into three categories.  First, CREW objects to the withholding of material related to responses to specific congressional inquiries, including two full drafts of a letter to the House Committee on Oversight and Reform's then-Chair Elijah E. Cummings, as well as emails discussing edits to this and another draft letter.  Pl.'s Cross-MSJ at 10–12.  Second, CREW contests the Department's withholding of several emails about document processing—related to other congressional document requests, and a plan for resuming operations following a government shutdown.  Id. at 15–16; see also Pl.'s Reply at 6–7.  Third, CREW argues that the Department improperly withheld "purely factual material" from an internal progress report about responses to congressional document requests.  Pl.'s Cross-MSJ at 13–15.  As to each category, CREW also asserts that the Department has not established that reasonably foreseeable harm would result from disclosure, and has not satisfied its further obligation to release any segregable, non-exempt material.  See id. at 16–20.

Below, the Court will consider in turn the parties' arguments regarding each category. As to the first two groups—related to congressional correspondence and internal policy discussions—the Court concludes that the Department has not, on the current record, met its burden at summary judgment. In particular, the Department's declarations and <u>Vaughn</u> index do not provide the level of detail needed to assess whether the documents are indeed deliberative, following recent guidance from the D.C. Circuit on this question in <u>Reporters Committee for Freedom of the Press v. FBI</u>, 3 F.4th at 361–68, and <u>Judicial Watch, Inc. v. U.S. Department of Justice</u>, 20 F.4th at 54–57. The Court will therefore deny both motions for summary judgment without prejudice as to these categories. As to the remaining withholding category, however— factual material embedded in an internal progress report—the Court concludes that the Department cannot meet its burden and that CREW is entitled to summary judgment. Accordingly, the Court will deny the Department's motion for summary judgment and grant CREW's cross-motion on that single issue.

A. <u>Congressional correspondence drafts</u>

CREW first challenges the withholding of emails related to specific congressional correspondence. Here, CREW objects to the redaction of emails discussing draft letters to Representative Cummings and then-Representative Trey Gowdy—neither of which, apparently, were ever sent.[2] It also argues that the Department improperly withheld the substantive content

---

[2] The Department suggests that CREW has conceded any objection to the Representative Gowdy material because its opening brief did not specifically mention this withholding. <u>See</u> Def.'s Resp. & Reply at 2 n.1 (citing <u>Shapiro v. U.S. Dep't of Just.</u>, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017)). The Court will not treat this objection as conceded, though it agrees that CREW's opening brief could have been more precise. In that pleading, CREW took issue with the withholdings in all twelve documents. <u>See</u> Pl.'s Cross-MSJ at 7, 9. Moreover, it clearly argued against application of the exemption to the Representative Cummings material, <u>id.</u> at 10– 12, and those arguments apply to the similar exchanges about the Representative Gowdy letter.

of two attachments to those emails, which contained drafts of the letter to Representative

Cummings.  On the current record, the State Department has adequately established that this

material is predecisional but has not demonstrated that it is also deliberative, as required for

invocation of the deliberative process privilege.  See Reps. Comm., 3 F.4th at 362.  As a result,

neither party is yet entitled to summary judgment.

      The material CREW seeks in this category is predecisional.  A document is

"predecisional" if it was "generated before the agency's final decision on the matter," and does

not "communicate[] a policy on which the agency has settled."  U.S. Fish & Wildlife Serv., 141

S. Ct. at 786.  "[W]hether a document communicates the agency's settled position" is a

"functional rather than formal inquiry," requiring courts to "consider whether the agency treats

the document as its final view on the matter."  Id. at 786, 788.  Neither the emails nor the

underlying draft letters represented the Department's final view on how to respond to the

congressional inquiries at issue.  In its summary judgment submissions, the Department

described the contents of the relevant emails as, among other things, "editing suggestions related

to . . . draft letters," Second Stein Decl. ¶ 18; "preliminary, non-final thoughts about what

information should be included" in one letter, Vaughn Index at 1; and efforts to "seek[]

clearance" on the other, id. at 4.  These are prototypical predecisional discussions.  The draft

letters to Chairman Cummings likewise were not final.  While CREW correctly notes that draft

documents are not "per se exempt" from disclosure, Judicial Watch, Inc., 20 F.4th at 55, a draft

is still "typically . . . predecisional" because it "is, by definition, a preliminary version of a piece

of writing subject to feedback and change," U.S. Fish & Wildlife Service, 141 S. Ct. at 786, 788.

That is precisely how the Department's Vaughn index describes the letters here:  as "drafts

reflecting th[e] edits" proposed by staffers, "predat[ing] any final version of the letter prepared

by Department officials." Vaughn Index at 1.  Because these materials "preceded the finalization

and transmission" of any letter to Congress, they "qualify as predecisional."  Judicial Watch,

Inc., 20 F.4th at 55.

CREW disputes this conclusion.  It contends that the Department has not adequately

established whether any letters were ever sent, giving the Court "no way to confirm" whether the

material, in fact, preceded a final decision.  Pl.'s Cross-MSJ at 10–11.  CREW's argument

misses the mark, on both the facts and the law.  As to the facts, the Court is satisfied that the

Department, at the very least, never sent the discussed letter to Representative Cummings.  In

response to CREW's summary judgment motion, the Department submitted a second declaration

detailing searches of both internal and public records that turned up no evidence of any

transmission.  Second Stein Decl. ¶ 16.  And as to the law, CREW's argument erroneously

focuses on the outcome of the Department's deliberations, rather than the role the material at

issue played in the process.  As the Supreme Court explained last term, "[a] document is not final

solely because nothing else follows it."  U.S. Fish & Wildlife Serv., 141 S. Ct. at 786.  While

proposals may "die[] on the vine" during deliberations, "documents discussing such dead-end

ideas can hardly be described as reflecting the agency's chosen course."  Id.  Here, the

Department apparently decided not to respond to either representative, so drafts and discussions

of potential responses do not "communicate[] a policy on which" the Department "ha[d] settled."

Id.  And even if CREW were right on the facts—and the Department did indeed send out letters

to Representatives Cummings or Gowdy—"a recommendation does not lose its predecisional . . .

character simply because a final decisionmaker later follows or rejects it without comment."

Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 370–71 (D.C. Cir. 2020) (citing

Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 185 (1975)).  The drafts and

discussions here were still mere recommendations about whether and how to communicate with members of Congress, so they are predecisional.

But "[d]etermining whether a document is deliberative is less straightforward than determining whether it is predecisional," Jud. Watch, 20 F.4th at 55, and the Court does not have enough information to make that evaluation on the present record.  In the past year, the D.C. Circuit has clarified what an agency must show—and at what level of detail—to sustain its burden on a deliberative process claim at summary judgment.  First in Reporters Committee, the court evaluated several documents over which the FBI had claimed deliberative process privilege, and found that not all of them were indeed deliberative.  See 3 F.4th at 361–68.  What mattered, the court explained, was whether the "documents discuss and debate proposed agency policies, positions, and actions," rather than "simply describe already-made and in-place policy choices."  Id. at 367.

Six months later—well after the close of briefing in this case—the D.C. Circuit further explained how an agency must demonstrate that a given document fits this standard.  In Judicial Watch, the court considered the Department of Justice's invocation of the deliberative process privilege over several drafts of a statement that then-Acting Attorney General Sally Yates ultimately released.  20 F.4th at 52.  The court concluded that the Department had not established the deliberative character of the draft statements under a test it drew from Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 585–86 (D.C. Cir. 1987).  Id. at 55–57.  That test requires an agency to show (1) "what deliberative process is involved" and (2) "the role played by the documents in issue in the course of that process," and encourages the agency to further "explain (3) the nature of the decisionmaking authority vested in the officer or person issuing the disputed document, and (4) the relative positions in the agency's chain of command occupied by

the document's author and recipient." Id. at 55 (internal citation and quotation marks omitted); see also id. at 56 (explaining that the D.C. Circuit has found material deliberative where it "knew the 'who,' i.e., the roles of the document drafters and recipients and their places in the chain of command; the 'what,' i.e., the nature of the withheld content; the 'where,' i.e., the stage within the broader deliberative process in which the withheld material operates; and the 'how,' i.e., the way in which the withheld material facilitated agency deliberation").

The State Department's evidentiary submissions, made shortly after or before the D.C. Circuit's most recent pronouncements, do not include the level of detail the Court now needs to evaluate the deliberative nature of the emails and draft letters. In particular, the Department has not told us "who prepared the" emails or drafts "or to whom the[y] were addressed," nor anything about the "nature of the decisonmaking authority vested" in the various players, including their "relative positions in the agency's chain of command." Id. at 56. Rather, in the Vaughn index, the Department identifies the authors and recipients of the emails only by their office—the offices of Information Programs and Services (IPS) and Government Information Services (GIS) for the communications related to the Representative Cummings letter, and IPS for those concerning the draft letter to then-Representative Gowdy. See Vaughn Index at 1, 4.

Nor has the Department told us much about the "deliberative process . . . involved"—i.e., the "procedure . . . followed" to consider the draft letters—or the "role" the material here played "in the course of that process." Jud. Watch, 20 F.4th at 56 (internal citation and quotation marks omitted). In fact, the Department's initial declaration provided no other detail about the authors, recipients, content, or context of the material, other than what appeared in the Vaughn index. While the Department later supplemented the record with respect to the letter to Representative Cummings, its explanation is still sparse. In the second Stein declaration, the Department

explained that the emails focused on drafts of a three-page letter from Mary Elizabeth Taylor, then-Assistant Secretary of the Bureau of Legislative Affairs, to Representative Cummings, concerning the "status of six inquiries" of the House committee he then led.  Second Stein Decl. ¶ 15.  The declaration further describes the accompanying email exchange as "communications reflecting, transmitting, and discussing proposed edits to these two drafts," and notes that they include "the drafters' and editors' preliminary, non-final thoughts about what information should be included" in the letter.  Id. ¶¶ 17–18.  But the D.C. Circuit rejected just such a broad, non-specific description of a deliberative process in Judicial Watch.  There, a claim that disclosure would "reveal the drafters' evolving thought processes" and "ideas and alternatives considered but ultimately rejected" was not enough; the department needed to "explain[] why."  20 F.4th at 56.  The State Department must do the same here.

For that reason, the Court will deny without prejudice both bids for summary judgment on these documents, and will allow the Department to reevaluate its invocation of the deliberative process privilege in light of Judicial Watch and Reporters Committee.  To be clear, the Court does not weigh in on whether the Department will ultimately be able to satisfy its burden on this question.  Courts in this district have long held that agency discussions about "how to respond to questions from Congress about matters of agency policy qualify as deliberative."  Judicial Watch, Inc. v. U.S. Dep't of State, 306 F. Supp. 3d 97, 115–16 (D.D.C. 2018); see also Competitive Enter. Inst. v. EPA, 12 F. Supp. 3d 100, 119–20 (D.D.C. 2014) (holding discussions about how to handle congressional testimony and communications were deliberative); Judicial Watch, Inc. v. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (holding same as to discussions of how to respond to inquiries from Congress).  But the Court simply cannot, on the record here, determine whether the material at issue constitutes the

type of back-and-forth exchange of ideas that the deliberative process privilege protects.  Should the Department determine that it does, State may again move for summary judgment and submit a more detailed declaration to aid the Court in evaluating its claim.

Because the Court cannot yet determine the deliberative nature of the emails and draft letters, it will hold off on evaluating whether the Department has met its other burdens at summary judgment—to show that reasonably foreseeable harm would result from release of any deliberative material, and to demonstrate that it adequately segregated any non-exempt material. The Court notes, however, that the Department's current description of the harm that would foreseeably result from the release of this material may, too, be inadequate under the standards the D.C. Circuit has articulated.  In the second Stein declaration, the Department explains generally that release "could reasonably be expected to have a chilling effect on the open and frank discussion of ideas, recommendations, and opinions."  Second Stein Decl. ¶ 18.  More specifically, the Department continues, disclosure "*may*" lead employees to "hesitate to offer their candid opinions to supervisors or coworkers about how to draft" the letters at issue.  Id. (emphasis added).  Of course, this kind of "chilling of candid advice is exactly what the [deliberative process] privilege seeks to prevent."  Machado Amadis, 981 F.3d at 371.  But, as the D.C. Circuit has explained, "agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."  Reps. Comm., 3 F.4th at 369–70 (quoting Machado Amadis, 971 F.3d at 371).  And that explanation must be "focused," demonstrating "why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  Id. The Court does not pass, now, on the sufficiency of the Department's factual showings under

these standards.  But, should it choose to renew its request for summary judgment, the

Department must make such a "focused and concrete," id., showing of foreseeable harm.

    B.  Internal strategy discussions and documents

    The Court reaches the same conclusions with respect to the next category of documents

CREW challenges, which similarly includes internal State Department emails and draft

documents.  Here, CREW objects to two withholding decisions: (1) redactions of emails about

"Department strategy in responding to congressional inquiries," see Vaughn Index at 3; Second

Stein Decl. ¶ 29; and (2) redactions from emails discussing a proposed plan for resuming

information-processing activities following a government shutdown, as well as a two-page

attachment containing that draft plan, see Vaughn Index at 5; Second Stein Decl. ¶ 31.[3]  As

above, the Court is convinced that this material is predecisional but cannot on the current record

determine whether any or all of it is deliberative.

    This set of emails is predecisional.  Again, a document is predecisional if it was

"generated before the agency's final decision on [a] matter."  U.S. Fish & Wildlife Serv., 141 S.

Ct. at 786.  The Department explains that a portion of these emails relate to a meeting where

staffers from several offices discussed "strategy in responding to congressional inquiries," as

well as specific "edits and status updates" on "proposed responses" to various requests.  Second

---

[3] Throughout its papers, CREW repeatedly refers to the draft plan as one "to resume activities in light of the COVID pandemic."  Pl.'s Reply at 6; see also Pl.'s Cross-MSJ at 15–16. But the documents at issue date from before the pandemic began, in January 2019, see Vaughn Index at 5, and must relate instead to reopening following the 35-day government shutdown in December 2018 and January 2019.  Notably, CREW's discussion of these documents contains largely atmospheric complaints about the State Department's alleged slow-down of FOIA processing during the pandemic, rather than any legal argument.  See Pl.'s Cross-MSJ at 15–16. True or not, these criticisms are irrelevant to whether the Department is entitled to withhold material about its internal processes.

Stein Decl. ¶ 29–30.  These emails are much like the ones evaluated above, as they, too, contain discussions of how to respond to congressional inquiries before any "final decision about how and whether to engage in a course of action."  Vaughn Index at 3.  The draft reopening plan and emails discussing it are likewise predecisional:  They "precede[d] a final Department determination regarding whether and how" the Office of Information Programs and Services "should resume activities."  Second Stein Decl. ¶ 32.

CREW suggests that the Department has not established the predecisional nature of the reopening plan because there is no "indication that State did not adopt the recommendations regarding whether and how to resume activities following the government shutdown."  Pl.'s Reply at 6.  CREW is right that, "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  But CREW is wrong about what the Department must show to rebut such a claim of agency adoption.  "[W]hen parties dispute whether an otherwise predecisional and deliberative document has lost its privileged status through adoption or public use, the FOIA requester—not the agency—bears the burden of persuasion on that issue."  Gellman v. Dep't of Homeland Sec., 525 F. Supp. 3d 1, 7 (D.D.C. 2021) (Cooper, J.); see also Elec. Priv. Info. Ctr. v. Dep't of Just., 584 F. Supp. 2d 65, 78 (D.D.C. 2008) (requester must provide evidence that agency "*actually* adopted or incorporated by reference the document at issue").  CREW here offers "mere speculation" on the question of adoption, which is insufficient to carry its burden.  Elec. Priv. Info. Ctr., 584 F. Supp. 2d at 7.

But, as with the emails discussed above, the Court cannot on this record determine if the redacted emails and withheld attachment are deliberative.  The Department's declaration

describes the material only as "discussions of internal Department processes" and "whether and how to resume the Office's activities."  Second Stein Decl. ¶¶ 30–31.  The declaration mentions that the emails contain some "edits" to and "status updates" regarding proposed "responses to congressional inquiries"—the former of which seem potentially deliberative, the latter less obviously so.  Id. ¶ 30.  And in general, the Department asserts that these documents are deliberative only because they "reflect the give-and-take of preliminary views" on each subject.  Id. ¶ 32.  Once again, the Department has failed to offer the information that the D.C. Circuit has indicated is needed to determine whether the documents are deliberative, including the roles and relative positions of the senders and recipients of the emails; details of the specific decisionmaking process; and the way the redacted material aided in that process.  Jud. Watch, 20 F.4th at 56.

For the same reasons discussed already, the Court will therefore deny both parties summary judgment as to these documents without prejudice.  The Court will likewise defer any consideration of the Department's compliance with the FOIA Improvement Act and its segregability obligations.  As with the first set of material, the Department should reevaluate whether these redactions continue to be covered by the deliberative process privilege under the D.C. Circuit's recent guidance.  If it believes they are, the Department may submit a more detailed declaration alongside a renewed motion for summary judgment.

      C.  Excerpts from document-processing status report

The final redactions that the State Department made, and that CREW challenges, appear in a document titled "IPS Weekly Activities Report and Quick Statistics for May 30, 2019." Vaughn Index at 2.  This document is a weekly report summarizing, among other things, the Office of Information Programs and Services' progress processing various FOIA and

congressional document requests.  Id.  Most of the twelve lines redacted from the report contain simple statistics:  the total number of documents and pages that one portion of the Department— the Congressional Document Production branch—sent along to another—the Bureau of Legislative Affairs—for potential production to various congressional committees.  Second Stein Decl. ¶ 24.  The Department redacted the number of documents and pages transmitted in response to several specific congressional inquiries, as well as the total number sent along for 2019 and the previous two calendar years.  Id.  The Department also redacted a single sentence describing the "preliminary status" of another State Department office's efforts to respond to a document request.  Vaughn Index at 2.  CREW contends that these redactions are improper because the "number" of "potentially responsive" pages and "status" updates on various document requests are "purely factual" and therefore not exempt under the deliberative process privilege.  See Pl.'s Cross-MSJ at 13–15.  CREW also argues that the redactions, even if covered by the privilege, cannot be withheld under the FOIA Improvement Act.  The Court largely agrees.

To begin, CREW apparently does not contest that the redacted material is predecisional. The Department asserts that it is because it "relates to preliminary assessments made by Department subcomponents" about the "number of pages and of documents" that were potentially responsive to external document requests—assessments that preceded the final decision and remained subject to change.  Second Stein Decl. ¶ 25.  Because this status report does not "communicat[e] the agency's settled position," U.S. Fish & Wildlife Serv., 141 S. Ct. at 786, on whether any potentially responsive documents should in fact be produced, and because CREW does not challenge this point, the Court will accept that the material is predecisional.

The problem for the State Department is that the redacted information is neither itself deliberative, nor the type of factual material that can be shielded by the deliberative process privilege.  In its opening brief, the Department seemingly conceded the factual nature of the redactions, but argued that they were nevertheless subject to the privilege because they would "necessarily reveal the agency's deliberative process, by allowing for a comparison with the final number of documents determined by the agency to be responsive."  Def.'s MSJ at 9.  In its response brief, the Department changed tack.  It now suggests that these preliminary assessments and status updates are themselves "deliberative information" because they "'reflect[] [State's] preliminary positions or ruminations about how to exercise discretion regarding whether and how to' release documents to Congress."  Def.'s Resp. & Reply at 5, 7 (quoting Heffernan v. Azar, 417 F. Supp. 3d 1, 18 (D.D.C. 2019)).  However framed, the Department's arguments miss the mark.

The material withheld from the IPS Weekly Activities Report is not inherently deliberative.  "[T]he key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'"  Reps. Comm., 3 F.4th at 364 (quoting Machado Amadis, 971 F.3d at 370).  The Department contends that the redacted numbers *themselves* are deliberative because they represent, in effect, a tally of every time the Congressional Document Production branch evaluated a document and deemed it potentially worthy of production.  Def.'s Resp. & Reply at 7.  In that way, the Department suggests, the numbers are comparable to an initial cost estimate, which, the D.C. Circuit has noted, exhibits "a surface precision," but in fact "deriv[es] from a complex set of judgments."  Quarles v. Dep't of Navy, 893 F.2d 390, 392–93 (D.C. Cir. 1990)).  The Court doubts that the same complex set of judgments are at play here.  Rather, each of the CDP's assessments seems to be binary—responsive or not.  And once those

individual determinations are divorced from the specific documents at issue, the Court struggles to see what deliberative judgment can be gleaned from the total.

More to the point, the Department never explains the role the numbers here play in any consultative process. In Quarles, the numbers at issue—cost estimates for proposals to establish a "homeport" for a Navy battleship group—had been produced by a naval "special study team," and were used by the Secretary of Defense to decide among various options. Id. at 391, 393. Here, by contrast, the Department described the underlying report only as a "summar[y of] the status of ongoing document requests being processed" by the office. Second Stein Decl. ¶ 22. State has not explained who received these status reports, nor how they used the specific material withheld—which included both ongoing updates and historical data—in any decisionmaking process. The numbers, then, appear to be more "snapshots that seemingly function as factual updates," without "any relation to a consultative process." Cause of Action Inst. v. Exp.-Imp. Bank of the U.S., 521 F. Supp. 3d 64, 83 (D.D.C. 2021).

For similar reasons, the Court rejects the Department's contention that it may nevertheless invoke the deliberative process privilege, even if the material is indeed factual. To be sure, in some cases factual material may still be protected by the deliberative process privilege. Courts will allow withholding of factual material "culled . . . from [a] much larger universe of facts," such that it "reflect[s] an exercise of judgment." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks omitted). Likewise, factual material may be withheld if its disclosure "would so expose the deliberative process that it must be covered." Elec. Frontier Found. v. U.S. Dep't of Just., 739 F.3d 1, 13 (D.C. Cir. 2014).

Although the Department tries to shoehorn this report into both rubrics, neither applies. First, the Department suggests that that the numbers redacted from the IPS Weekly Report, although "expressed in quantitative terms, . . . are nonetheless opinions rather than facts" because they reflect one office's judgment as to how many documents should be released.  Def.'s Resp. & Reply at 7 (quoting <u>SMS Data Prod. Grp., Inc. v. U.S. Dep't of Air Force</u>, No. 88-cv-481, 1989 WL 201031, at *2 (D.D.C. Mar. 31, 1989)).  This argument merely repackages the claim that the status updates are themselves deliberative, which the Court has already rejected. Moreover, the D.C. Circuit has cautioned that "the fact/opinion test . . . must not be applied mechanically . . . because the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material."  <u>Mapother v. Dep't of Just.</u>, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  The redacted material here played no apparent role in any deliberative give-and-take, so it is not opinion shielded from disclosure.  Second, the Department asserts that disclosure of the twelve redacted lines in this status report would "necessarily reveal the Department's deliberative process leading up to final release determinations."  Def.'s Resp. & Reply at 6–7.  But again, the Court does not see what these aggregated and out-of-context updates could meaningfully reveal about any deliberative process.  For that reason, the Court concludes that the redactions are not deliberative.

Even if the redacted material here *is* deliberative, the Department has not met its burden to justify withholding it under the FOIA Improvement Act.  Congress enacted the FOIA Improvement Act's "distinct foreseeable harm requirement" in part out of "particular[] concern[] with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege."  <u>Reps. Comm.</u>, 3 F.4th at 369.  To carry this burden with respect to the IPS Weekly Report redactions, the Department must provide "a focused and concrete demonstration of why"

their disclosure "will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward.'" Id. at 370.  The Department's explanation here, however, is all either boilerplate or speculation.  It first suggests that releasing this information "could reasonably be expected to chill the open and frank discussion between Department subcomponents regarding how to process potentially responsive documents."  Second Stein Decl. ¶ 26.  The Court must reject such a "cookie-cutter," "unparticularized" assertion.  Reps. Comm., 3 F.4th at 371.  The Department more specifically suggests that, were this type of status report made fully public, Department officials would "refuse to allow employees to provide such information" in future status reports, making it more difficult to "track[] the status of such requests," leading inevitably to "backlogs" and a slow down in processing and production. Second Stein Decl. ¶ 26.  Although this projected harm is more specific, the Court finds it wholly speculative, attenuated, and unconvincing, and therefore insufficient to carry the Department's burden.  See Reps. Comm., 3 F.4th at 369 ("Agencies cannot rely on 'mere speculative or abstract fears or fear of embarrassment' to withhold information." (quoting S. Rep. No. 4, 114th Cong., 1st Sess. 8 (2015)).  As a result, the Court finds that the redacted material—even if deliberative—would not result in any foreseeable harm if released, and so will order the Department to do so.

**IV.   Conclusion**

For the foregoing reasons, the Court will deny the Defendant's motion for summary judgment—in part without prejudice—and will grant in part and deny without prejudice in part CREW's cross-motion for summary judgment.   A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>February 11, 2022</u>